UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ERIC J. RUPP, <br><br> Plaintiff, <br><br> v. <br><br> IQ DATA INTERNATIONAL, INC., <br><br> Defendant. | CIVIL ACTION <br><br> COMPLAINT 3:19-cv-00179 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** Eric J. Rupp ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining of IQ Data International, Inc. ("Defendant" or "IQ") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 and violations of the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code Ann. §392.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §1391 as Defendant engages in substantial business activity in this District, and a substantial part of the events or omissions giving rise to the claims occurred within this District, 28 U.S.C. § 1391(b).

1

## PARTIES

4. Plaintiff is a natural person over 18-years-of-age who is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

5. Defendant is a business entity engaged in the collection of debt within the State of Texas. Defendant is incorporated in the State of Washington.

6. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

7. Defendant regularly collects, or attempts to collect debts allegedly owed to third parties.

8. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

9. At all times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, vendors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTS SUPPORTING CAUSES OF ACTION

10. On or around May 1, 2018, Plaintiff gave written notice to the management at Carroll's Creek Landing ("CCL") that he and his wife had to move.

11. Plaintiff is an active duty military service member and is required to move due to his service.

12. Plaintiff requested to conduct a walkthrough of his unit at CCL to ensure everything was proper before moving out. Plaintiff's request was denied by CCL.

13. On or around July 2, 2018, Plaintiff moved to his current address in West Texas.

14. Subsequently, Plaintiff began calling CCL in an attempt to verify that his lease of the unit was paid in full and that there were no outstanding issues or payments. During each phone call with CCL, Plaintiff was told that CCL had not looked into it yet and were working on it.

15. On or around August 21, 2018, Plaintiff's wife received a phone call from Defendant which stated that Plaintiff allegedly owed an unpaid final statement bill in the amount of $98.00 plus interest ('subject debt").

16. When Plaintiff's wife informed Defendant she was confused as to why they owed CCL money, Defendant's representative questioned her as to why she wasn't paying and threatened to report her to the credit bureaus if payment was not received by 4:00pm that afternoon.

17. Perplexed, Plaintiff called CCL and asked when his final move out statement was generated and why he wasn't informed that he still owed a final balance.

18. CCL responded by saying that the final statement was generated two days prior, on August 19, 2018, that the balance owed was $98.00, and that CCL immediately turned the account over to Defendant.

19. After speaking with CCL, Plaintiff immediately called Defendant.

20. Plaintiff spoke with Defendant's representative, Ms. Robertson ("Representative").

21. Plaintiff asked Representative why he was being charged the $98.00 and why there was interest since the statement had only been issued 2 days ago. Plaintiff stated that he wanted to examine the charge and see if it was legitimate.

22. Representative responded by informing Plaintiff that Washington state law allows Defendant to charge 7% interest every day and although the statement was only issued 2 days prior, Plaintiff moved out July 2 and was past due since that date. Representative then stated that he had until 4pm that day or Defendant would report the subject debt to the credit bureaus.

23. Representative then transferred the call to Defendant's operations manager, Jeremy Froelicher ("Manager").

24. Manager reiterated to Plaintiff that he must pay by 4:00pm or Defendant will report the subject debt to the credit bureaus.

25. Plaintiff asked Manager when they were allowed to report the debt to the credit bureaus, as Plaintiff wanted to review the final statement and potentially dispute the debt.

26. Manager responded by telling Plaintiff that he did not care if Plaintiff paid the subject debt or not, he would mark Plaintiff's file as refused to pay and that it would not be due to the inability to pay.

27. The disposition of this phone call left Plaintiff feeling worried and confused.

28. Despite informing Plaintiff that Defendant would report him to the credit bureaus at 4:00pm, Defendant at the time had no intention of reporting the subject debt to Plaintiff's credit.

29. Defendant's statement to Plaintiff that it was going to report the subject debt to Plaintiff's credit was false, deceptive, and misleading.

30. The aforementioned statement that Plaintiff must pay by 4:00pm and Defendant's non-responsiveness to Plaintiff's desire to validate and potentially dispute the subject debt overshadowed and obfuscated Plaintiff's right to dispute the subject debt with Defendant.

31. Defendant's actions as delineated above, including threating to mark Plaintiff down as refused to pay, regardless of whether payment was tendered, were unfair and unconscionable.

32. Worried, confused, and intimidated by Defendant's unconscionable actions, Plaintiff tendered a payment of $98.00 to Defendant in order to extinguish the subject debt.

33. Subsequently, Plaintiff received a 30-day validation notice from Defendant, informing of his right to have the debt validated and disputed if he so chooses.

## DAMAGES

34. Defendant's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

35. Plaintiff has expended time and incurred costs consulting with his attorneys as a result of Defendant's unfair, deceptive, and misleading actions.

36. Plaintiff was unduly inconvenienced and harassed by Defendant's unlawful attempts to collect the subject debt.

37. Defendant's illegal collection activities have caused Plaintiff actual harm, including but not limited to, harassment, emotional distress, anxiety, and loss of concentration.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

38. Plaintiff restates and realleges paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

40. The alleged subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

41. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

42. Moreover, Defendant is a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

43. Defendant used the telephone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

44. Defendant's communications to Plaintiff were made in connection with the collection of the subject debt.

45. Defendant violated 15 U.S.C. §§1692d, e, and f through its unlawful debt collection practices.

    a. **Violations of FDCPA § 1692d**

46. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct. Specifically, Representative and Manager engaged in abusive, threatening and harassing conduct when they threatened to report the subject debt to the credit bureaus if Plaintiff was unable to pay by 4:00pm and disregarded Plaintiff's attempts to verify and dispute the debt.

47. Additionally, Defendant violated §1692d when Manager abusively told Plaintiff he would mark his account down as refused to pay, even if Plaintiff paid, when all Plaintiff wanted was to validate the debt and potentially dispute it if he felt the charges were wrong.

    b. **Violations of FDCPA § 1692e**

48. Defendant violated 15 U.S.C. §1692e by using false, deceptive, misleading, and unfair means in attempting to collect the alleged subject debt.

49. Defendant violated 15 U.S.C. §1692e(5) by threatening to take action that cannot legally be taken. Manager threatened to mark Plaintiff's account as refused to pay, even if Plaintiff were to make a payment.

50. Defendant violated 15 U.S.C. §1692e(8) when it threatened to report the subject debt to the credit bureaus at 4:00pm, completely disregarding Plaintiff's desire to validate and potentially dispute the subject debt.

51. Defendant violated 15 U.S.C. §1692e(10) using false or deceptive means to collect or attempt to collect the subject debt.

### c. Violations of FDCPA § 1692f

52. Defendant violated §1692f by engaging in unfair or unconscionable conduct when attempting to collect the subject debt. Specifically, Manager's unconscionable threat of falsely marking Plaintiff's account was unfair and unconscionable. Additionally, Manager and Representative engaged in unfair and unconscionable conduct when they threatened to report the subject debt to the credit bureaus if Plaintiff was unable to pay by 4:00pm and disregarded Plaintiff's attempts to verify and dispute the debt.

53. Defendant's unfair and unconscionable actions were nothing more than reprehensible strong-arm tactics used in an attempt to coerce an Active Duty member of the Armed Forces into paying before providing proof that the debt was actually owed. Unfortunately, Defendant's shameful collection activities succeeded in doing so.

**WHEREFORE**, Plaintiff ERIC J. RUPP respectfully requests that this Honorable Court:
   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
   c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
   d. Award any other relief as the Honorable Court deems just and proper.

### COUNT II – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

56. The alleged subject debt is a "debt" "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

57. Defendant is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

    a. **Violations of TDCA § 391.304**

58. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304, states that "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation..."

59. Defendant violated the TDCA when it threatened to report the subject debt to the credit bureaus if Plaintiff was unable to pay by 4:00pm and disregarded Plaintiff's attempts to verify and dispute the debt.

60. Furthermore, Defendant told Plaintiff it would mark his account down as refused to pay, even if Plaintiff paid, when all Plaintiff wanted was to validate the debt and potentially dispute it if he felt the charges were wrong.

**WHEREFORE**, Plaintiff ERIC J. RUPP respectfully requests that this Honorable Court:

    a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
    b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);
    c. Award Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);
    d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;
    e. Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b) ; and
    f. Award any other relief as the Honorable Court deems just and proper

**Plaintiff demands trial by jury.**

Dated: July 2, 2019

Respectfully Submitted,

/s/ Alexander J. Taylor
/s/ Marwan R. Daher
/s/ Omar T. Sulaiman
Alexander J. Taylor, Esq.
Marwan R. Daher, Esq.
Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com